UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY KASEM TAROKH, | No. C-13-0804 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |
| CITIMORTGAGE, INC., *et al.*, | **(Docket No. 8)** |
| Defendants. | |

Plaintiff Casey Kasem Tarokh has filed suit against Defendants Citimortage, Inc. ("CMI") and Northwest Trustee Services, Inc., asserting various claims under state law related to a foreclosure of certain real property located in San Jose, California. Currently pending before the Court are two motions: (1) Mr. Tarokh's motion to remand and (2) CMI's motion to dismiss. The Court finds these matters suitable for disposition without oral argument and **VACATES** the hearing set for May 30, 2013. For the reasons discussed below, the Court **GRANTS** the motion to remand. Because the Court is remanding the case back to state court, it need not rule on the motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

In his complaint, Mr. Tarokh alleges as follows.

In May 2007, Mr. Tarokh executed a deed of trust against the real property at issue as security for a loan of $828,000 from CMI.[1] *See* Compl. ¶ 11 & Ex. A (deed of trust). The loan was

---

[1] The complaint states that the loan was for $878,000, but this appears to be a typographical error as the deed of trust notes that the loan was for $828,000. *See* Compl., Ex. A (deed of trust).

a negative amortization loan for five years. CMI did not inform Mr. Tarokh about the consequences of this kind of loan. *See* Compl. ¶ 13.

Mr. Tarokh fell behind on his loan after he suffered pay cuts to his salary. *See* Compl. ¶¶ 14-15. On September 14, 2012, Northwest recorded a notice of default with respect to the property. *See* Compl., Ex. B (notice of default). Mr. Tarokh applied for loan modification with CMI but was denied "without a good faith review of his financials." Compl. ¶ 18. Mr. Tarokh also maintains that his application was unfairly denied as "no intelligible reason" was given for the denial; he was simply told that he was ineligible, which prevented him from trying to cure the problem. Compl. ¶ 31. Mr. Tarokh maintains that the denial was "purposefully vague in order to drive [him] into foreclosure." Compl. ¶ 31.

Based on, *inter alia*, the above allegations, Mr. Tarokh has asserted the following claims under state law:

(1)  Violation of California Civil Code § 2923.5, which provides that a notice of default may not be recorded until after the borrower is contacted "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure," Cal. Civ. Code § 2923.5(a)(2), or until after the borrower has not been reached after due diligence. *See id.* § 2923.5(e).

(2)  Breach of the implied covenant of good faith and fair dealing. Mr. Tarokh maintains that, because the loan agreement provides that "'This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note,'" CMI had an implied obligation to fairly review his application for loan modification. Compl. ¶ 31.

(3)  Negligence. Mr. Tarokh asserts that, once a financial institution offers to undertake and does in fact undertake the task of reviewing a loan modification application, then it has a duty to review the application in good faith and "must not leave the borrower in a worse position." Compl. ¶ 37. According to Mr. Tarokh, the financial institution also has a duty to communicate to the borrower in writing within a reasonable period the reason why a loan modification application is denied. *See* Compl. ¶ 38. This duty was breached because CMI

2

did not give "the exact reason(s) for which he was ineligible" but simply stated that he was. Compl. ¶ 39.

(4) Negligent infliction of emotional distress. Mr. Tarokh alleges that he suffered emotional distress as a result of CMI's negligence and breach of the implied covenant of good faith and fair dealing.

(5) Violation of California Business & Professions Code § 17200. Mr. Tarokh asserts that CMI acted unlawfully and unfairly in violation of the statute, in particular by failing to explain why he was not eligible for loan modification "rather than simply being vague." Compl. ¶ 54.

Mr. Tarokh initiated his lawsuit containing the above causes of action in state court. Subsequently, CMI removed the action to federal court on the basis of diversity jurisdiction. *See* Docket No. 1 (notice of removal).[2] It appears that CMI removed prior to service of the complaint on Northwest, the other defendant in the case. *See* Docket No. 1 (Not. of Removal ¶ 4) (stating, upon information and belief, that Mr. Tarokh had not yet served Northwest).

After CMI removed, it filed a motion to dismiss, which Northwest (making its first appearance) then joined. Mr. Tarokh in turn filed a motion to remand the case back to state court. In his motion, Mr. Tarokh contends that both CMI and Northwest should be considered citizens of California, in which case he and Defendants are citizens of the same state. He further argues that, regardless of diversity of citizenship, the damages he seeks do not exceed $75,000. *See* 28 U.S.C. § 1332 (providing that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000").

## II. DISCUSSION

As noted above, there are two motions pending before the Court: (1) Mr. Tarokh's motion to remand and (2) CMI's motion to dismiss (which Northwest has joined). The Court addresses the motion to remand first because, if the removal of the case was in fact improper as Mr. Tarokh claims, then the Court should not address the merits of the motion to dismiss.

---

[2] The notice of removal asserts only diversity jurisdiction under 28 U.S.C. § 1332. CMI does not contend that it is a national bank subject to the jurisdictional test of 28 U.S.C. § 1348.

3

A.      Legal Standard

>   A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction. However, "'[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," and that the court resolves all ambiguity in favor of remand to state court.

*Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). The burden of establishing removal jurisdiction rests with the removing party. *See id.*; *see also Geographic Expeds., Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010) (noting that, where a case has been removed, the defendant has the burden of proving by a preponderance of the evidence that removal is proper).

B.      Diversity of Citizenship

CMI claims that there is diversity of citizenship because, while Mr. Tarokh is a citizen of California, it is a citizen of New York (the state where it is incorporated) and of Missouri (the state where its principal place of business is located). *See* Docket No. 1 (Not. of Removal ¶ 1(a)); *see also* Docket No. 19 (RJN, Ex. A) (reflecting incorporation in New York). CMI also argues that the diversity of Northwest may be disregarded because it is a nominal defendant but, even if its citizenship is considered, it is a citizen of Washington (where it is incorporated and where its principal place of business is located). *See* Docket No. 1 (Not. of Removal ¶ 1(b)); *see also* Docket No. 19 (RJN, Ex. B) (reflecting incorporation in Washington).

In his motion, Mr. Tarokh does not dispute where CMI and Northwest are incorporated. However, he takes the position that CMI should still be deemed a citizen of California because "its predominant place of business is in California." Mot. at 4. Mr. Tarokh argues that CMI has branch offices and employees in California and that it has "a substantially significant amount of business in California compared to any other state" – "both by sheer volume and per capita." Mot. at 5. As for Northwest, Mr. Tarokh disputes that it is a nominal defendant because it "is the foreclosing trustee and is a necessary party to obtain appropriate remedies [he] seeks[,] including [an] injunction of the foreclosure sale which . . . Northwest seeks to conduct." Mot. at 4. Mr. Tarokh also argues that,

4

like CMI, Northwest's principal place of business is in California as it has branch offices and employees in California and its business in California is more significant than in any other state, both in terms of volume and per capita. *See* Mot. at 5.

For purposes of this order, the Court assumes that Northwest is a nominal defendant such that its citizenship may be ignored.[3] With this assumption, the critical question becomes what is the citizenship of CMI.

A corporation such as CMI is deemed to be a citizen of (1) the state where it is incorporated and (2) the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The Ninth Circuit

> appl[ies] two tests to determine the state of a corporation or partnership's principal place of business. First we apply the "place of operations" test. Under that test, a corporation's principal place of business is the state containing "'a substantial predominance of corporate operations.'" If no state contains a "substantial predominance" of corporate operations, we apply the "nerve center" test, which locates the corporation's principal place of business in the state where "the majority of its executive and administrative functions are performed."
>
> Determining whether a "substantial predominance" of a corporation's operations take place in a given state "plainly requires a comparison of that corporation's business activity in the state at issue

---

[3] Although, in the complaint, Mr. Tarokh often makes allegations against Defendants collectively – *i.e.*, lumping CMI and Northwest together – it appears that the alleged wrongdoing has been committed by CMI only, and not Northwest. Thus, Northwest would appear to be a nominal defendant only. *See Perez v. Wells Fargo Bank, N.A.*, No. C-11-02279 JCS, 2013 U.S. Dist. LEXIS 32638, at *13-14 (N.D. Cal. Mar. 8, 2013) (taking note of defendant's concession that "substantive allegations against the trustee can mean that the trustee is no longer a nominal party"); *Townsend v. Quality Loan Serv. Corp.*, No. 3:12-cv-05778-RBL, 2012 U.S. Dist. LEXIS 154254, at *5-6 (W.D. Wash. Oct. 26, 2012) (noting that "[a] trustee under a deed of trust is often a nominal party" but adding that "[a] trustee can also be more than a nominal party when the complaint makes substantive allegations and asserts claims for money damages"); *Beiermann v. JP Morgan Chase Bank Nat'l Ass'n*, No. 3:11-cv-05952 RBL, 2012 U.S. Dist. LEXIS 55252, at *6-7 (W.D. Wash. Apr. 19, 2012) (finding that "Quality's status as a trustee is not sufficient to render it a nominal party" because plaintiffs had "made substantive allegations against Quality and . . . asserted claims for damages against Quality" and had "not avoided removal by lumping multiple parties together, and making blanket allegations against the Defendants to defeat nominal status[;] [r]ather, Plaintiffs have made specific factual allegations against Quality that give rise to Quality's potential liability"); *Prasad v. Wells Fargo Bank, N.A.*, No. C11-894-RSM, 2011 U.S. Dist. LEXIS 103122, at *5-6 (W.D. Wash. Sept. 13, 2011) (noting that "[m]ost courts that have considered the issue" have concluded that a trustee under a deed of trust is a nominal defendant in an action challenging the foreclosure or threatened foreclosure; adding that "instances in which courts have held that a trustee under a deed of trust is not a nominal defendant have involved complaints wherein plaintiffs asserted causes of actions directly against the trustee").

United States District Court
For the Northern District of California

> to its business activity in other individual states." We employ a number of factors to determine if a given state contains a substantial predominance of corporate activity, including: "the location of employees, tangible property, production activities, sources of income, and where sales take place." Substantial predominance does not require the majority of the corporation's operations to occur in a single state, but the corporation's activity in one state must be "substantially larger" than the corporation's activity in any other state.

*Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1028-29 (9th Cir. 2009).

While the Ninth Circuit has declined to "adopt any hard and fast rule or percentage by which the operations in one state must exceed those in other states," it has noted that, in evaluating whether there is substantial predominance, a court must give consideration to "both the nature of the corporation's business activities and the purposes of the corporate citizenship statute." *Id.* "[T]he term 'substantially' must be defined with an eye to ensuring that a corporation is a citizen of the place in which it is least likely to suffer prejudice." *Id.*; *see also Vechayiem v. Target Corp.*, No. CV 09-04811 RGK (AGRx), 2009 U.S. Dist. LEXIS 77939, at *5 (C.D. Cal. Aug. 18, 2009) (noting that "[t]he potential for local bias is most likely when a local party sues a foreign corporation that has little if any presence in the forum"; in contrast, when "a foreign corporation has significant contact with the forum, the likelihood of local prejudice is minimized because the local community and courts identify and are familiar with the corporation").

For purposes of the pending motion, the most instructive Ninth Circuit case is *Davis*. There, the lower court had held that, under the substantial predominance test, the defendant Best Buy Stores had its principal place of business in California. The district court noted that Best Buy Stores had "more stores in California than in any other state, more employees in California than in any other state, and more sales in California than in any other state." *Id.* On appeal, the Ninth Circuit agreed that Best Buy Stores's

> California operations predominate over its operations in other states. But we cannot say that these operations "substantially" predominate over Best Buy Stores's operations in other states. Best Buy Stores is a nationwide retailer with stores in 49 states, the District of Columbia, and Puerto Rico. At most, the statistics demonstrate that Best Buy Stores's California retail activities roughly reflect California's larger population. If a corporation may be deemed a citizen of California on this basis, nearly every national retailer – no matter how far flung its operations – will be deemed a citizen of California for diversity

6

        purposes. Such a result is untenable. With operations distributed widely across the country, Best Buy Stores is no more familiar to Californians than it is to Texans or Illinoisan, and hence no less likely to suffer prejudice in California than elsewhere.

*Id.* at 1029-30.[4] The court noted that both Texas and Illinois actually had "more Best Buy stores per capita than does California," *id.* at 1030 n.4, but then added that

        [w]e do not require that courts apply a per capita approach to determining a corporation's principal place of business in every case. However, we hold that a nationwide retailer with operations spread across many states will be a citizen of California only when a substantial predominance of its activities are located in California; it will not be a citizen of California merely because its operations in California cater to California's larger population.

*Id.* at 1030. The court also indicated that, "when a corporation has operations spread across many states, the nerve center test is usually the correct approach." *Id.* at 1029. This is because, "[w]hen a corporation's activities are spread over many states, it is much less likely operations in any one state will 'substantially' predominate over operations in other states." *Id.*

        In light of *Davis*, Mr. Tarokh's argument that, under the substantial predominance test, California is CMI's principal place of business is not particularly persuasive. Even if one assumes that CMI's volume of business in California is larger than that in any other state (a claim for which Mr. Tarokh provides no evidence), that is likely a reflection of California's larger population. As to Mr. Tarokh's claim that CMI's business in California is greater than that in any other state on a per capita basis (again, a claim for which he provides no evidence), the substantial predominance "test requires a 'substantial' predominance, not mere predominance." *Id.*

        Of course, that Mr. Tarokh's argument is weak is not dispositive because, as he notes in his papers, CMI has the burden of proving diversity of citizenship and it has not provided any competent evidence that its principal place of business is in Missouri, as claimed. Presumably, CMI has claimed Missouri as its principal place of business under the nerve center test, which is

---

[4] *See also Roland-Warren v. Sunrise Senior Living, Inc.*, No. 09 CV 1199 JM (WMc), 2009 U.S. Dist. LEXIS 68393, at *13 (S.D. Cal. Aug. 4, 2009) (stating that "[n]o one state substantially predominates over the others in terms of property, employees, customers, or sales revenue[;] [o]nce the population differentials among the most heavily represented states are considered, other states actually contend for the top spot").

reasonable given the Ninth Circuit's statement that, "when a corporation has operations spread across many states, the nerve center test is usually the correct approach." *Id.* at 1029.

However, CMI has not provided sufficient evidence that its nerve center (*i.e.*, where the majority of its executive and administrative functions are performed) is in Missouri. *See, e.g.*, *Long v. Medcath Inc.*, No. CV12-8034-PCT-JAT, 2012 U.S. Dist. LEXIS 70312, at *7-8 (D. Ariz. May 21, 2012) (noting that "Defendant does not attach a single exhibit demonstrating that [its] nerve center is in North Carolina, not even a declaration of a corporate officer or employee"; adding that "[d]efense counsel cannot satisfy Defendant's burden of proving diversity of citizenship with a mere statement in response[;] [w]ithout any sort of evidence, not even a declaration, Defendant has not offered sufficient proof to overcome the strong presumption against removal jurisdiction"). At best, CMI has offered a record from New York's Division of Corporations which indicates that the company is incorporated in New York. *See* Docket No. 19 (RJN, Ex. A). While this document also lists as CMI's "Principal Executive Office" an address in Missouri, CMI has failed to explain why the Court may take judicial notice of this fact (as opposed to the fact of the state where the company is incorporated). Moreover, even if the Court could take judicial notice of the fact – *i.e.*, that CMI has asserted to the Division of Corporations that its "Principal Executive Office" is in Missouri – that is nothing more than an assertion based on hearsay fact that is not readily verifiable (like state of incorporation); this single record does not establish that, in fact, Missouri is the state where the majority of CMI's executive and administrative functions are performed. *See Davis*, 557 F.3d at 1028-29. While CMI could easily have provided a declaration to support its position, it has failed to do so.

Accordingly, the Court remands the instant action because CMI has failed to provide sufficient evidence on its principal place of business. As the removing party, CMI has the burden of establishing diversity jurisdiction and it has failed to do so.

///
///
///
///

8

### III. CONCLUSION

For the foregoing reasons, the Court grants Mr. Tarokh's motion and remands the instant case back to the state court from which it was removed. In light of the remand, the Court does not rule on the merits of CMI's motion to dismiss.

The Clerk of the Court is instructed to close the file in the case.

This order disposes of Docket No. 8.

IT IS SO ORDERED.

Dated: May 14, 2013

_____
EDWARD M. CHEN
United States District Judge